IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE McFARLAND, | ) | CASE NO. 1:17 CV 518 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Andre McFarland under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 7. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

McFarland who was 48 years old at the time of the administrative hearing,[11] has an 11th grade education.[12]   His past relevant employment experience includes work as a dishwasher/kitchen worker, and security guard.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that McFarland had the following severe impairments: HIV, post-traumatic stress disorder (PTSD), depression, degenerative disc disease and cervical spondylosis without myelopathy, and diabetes with right arm neuropathy (20 CFR 404.1520(c) and 416.920(c).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding McFarland's residual functional capacity ("RFC"):

---

[7] ECF # 18 (Commissioner's brief); ECF # 17 (McFarland's brief).

[8] ECF # 18-1 (Commissioner's charts); ECF # 17-1 (McFarland's charts).

[9] ECF # 16 (McFarland's fact sheet).

[10] ECF # 20.

[11] ECF # 16 at 1.

[12] *Id.*

[13] *Id.*

[14] Transcript ("Tr.") at 16.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (b) and 416.967(b) except that he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He is able to sit for a total of 6 hours and stand and/or walk for a total of 6 hours out of an 8-hour workday. The claimant can occasionally push/pull and occasionally operate foot controls with bilateral lower extremities. The claimant can frequently reach overhead bilaterally and frequently handle, finger, and feel bilaterally. The claimant can occasionally climb ramps and stairs, but he can never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, frequently stoop, and occasionally kneel, crouch, and crawl. The claimant can have no more than occasional exposure to unprotected heights and moving mechanical parts. He can perform no commercial driving. The claimant is limited to performing simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work). He can have occasional interaction with coworkers, supervisor and the general public. The claimant can tolerate occasional changes in the workplace that can be easily explained. In addition to normal breaks, the claimant would be off task 10 percent of the time in an 8-hour workday.[15]

The ALJ decided that this residual functional capacity precluded McFarland from performing his past relevant work as a dishwasher/kitchen worker and security guard.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that McFarland could perform.[17] The ALJ, therefore, found McFarland not under a disability.[18]

---

[15] *Id.* at 18.

[16] *Id.* at 22.

[17] *Id*. at 23.

[18] *Id*. at 24.

**B.     Issues on judicial review**

McFarland asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, McFarland presents the following issue for judicial review:

- Whether the ALJ's violated the treating physician rule resulting in an improper assessment of plaintiff's residual functional capacity.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

# Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

---

[19] ECF # 17 at 1.

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

-9-

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and;

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.    Application of standards**

The single issue for decision in this case is the weight given to the RFC opinion of Dr. Robert Kalayjian, M.D., McFarland's treating physician.[71]

The ALJ initially recognized Dr. Kalayjian as a treating source.[72] He then summarized Dr. Kalayjian's functional opinion as stating that McFarland could "only occasionally lift five pounds due to myelopathy of the upper extremities, and he could stand or walk for a total of one hour out of an 8-hour workday due to peripheral neuropathy and could rarely perform postural and manipulative activities."[73] But then, without assigning a specific weight to this opinion,[74] the ALJ stated that "[t]he medical evidence of record,

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] ECF # 17 at 9.

[72] Tr. at 21.

[73] *Id*. (citing transcript).

[74] The ALJ assigned "less weight" to Dr. Kalayjian's opinion than the "moderate weight" that was given to the opinions of Dr. Leanne Bertani, M.D., and Dr. Esberdado Villanueva, M.D., state agency reviewing physicians. *Id.* at 21.

-13-

including the doctor's own treatment notes showing full strength of the bilateral upper and lower extremities, does not support the extent of the limitations given."[75]

In fashioning the RFC, the ALJ here relied to some degree, as noted, on the opinions of Dr. Bertani and Dr. Villanueva, but then stated that McFarland "has additional limitations especially with respect to handling, reaching, and fingering due to neuropathic symptoms of his upper right hand discussed above."[76] That limitation, as outlined by the ALJ, was that McFarland "has symptoms of decreased sensation of the right hand, but full strength of his bilateral upper extremities."[77]

It is noted initially that although the ALJ's reason for affording "less weight" to Dr. Kalayjian's opinion is not extensive, it contains one specific statement that Dr. Kalayjian's own treatment notes show full strength of McFarland's bilateral upper and lower extremities. Such a finding, without more, could be inconsistent with Dr. Kalayjian's RFC opinion that McFarland could only lift five pounds occasionally due to myelopathy of his upper and lower extremities.

In that regard, I observe that in reviewing Dr. Kalayjian's treatment notes they show:

(1) complaints in October 2014 about "worsening numbness involving R hand" together with "hand and arm numbness" that had existed for a month, although

---

[75] *Id.* at 21-22 (citing transcript).

[76] *Id.* at 21.

[77] *Id.* at 20.

the physical exam that date showed "strength is symetric [*sic*] at 5/5 both ue [*sic*] including grip, biceps and deltoid;"[78]

(2)  the next visit, in February 2015,[79] discloses no complaints about numbness and no evaluation for strength;

(3)  a June 2015 consult with a neurologist, ordered by Dr. Kalayjian, showed that McFarland told the physician that he is experiencing arm pain in his right arm extending to the hand; that he is "dropping things" and his grip is "less strong;" the summary was weakness on the right side, with numbness in the hand and feet; an examination showed strength readings of 5 for all upper and lower extremities, but a sensory examination found "decreased right hand entire and both feet distally;"further examination showed "moderately severe degenerative diseases"of the spine;[80]

(4)  a June 2015 visit with Dr. Kalayjian includes notes of "R arm neuropathy with intermittent weakness in the R hand. Works as a dishwasher - dropping;" again, a strength test showed 5/5 strength bilaterally in the hands and shoulders, but noted that there was "reduced sensation of R dorsal hand vs L; [81]the final summary included a reference to "hand weakness;"[82]

(5)  an office visit in March 2016 contains notes of "hand weakness/numbness, cervical spine xray with degenerative disease;"[83]

(6)  Dr. Kalayjian submitted his medical source statement on April 4, 2016.[84]

---

[78] *Id*. at 1324.

[79] *Id*. at 1334-37.

[80] *Id*. at 1359-67.

[81] *Id*. at 1370.

[82] *Id*. at 1372.

[83] *Id*. at 1383.

[84] *Id*. at 1377-79.

As this foregoing review of the treatment notes makes clear, the fact that McFarland retained *strength* in his upper extremities is not inconsistent with him having reduced *sensation* in his hands, which numbness restricts his ability to grip and lift. Indeed, the ALJ himself, as discussed above, noted that same restriction in adopting an RFC with greater limitations than those recognized by the state agency reviewers.

In short, there appears to be no internal inconsistencies between Dr. Kalayjian's treatment notes and his functional opinion, at least as it concerns McFarland's ability to use his hand and arms. As noted, that portion of the opinion is also similar to that of the RFC as adopted.

Where Dr. Kalayjian's opinion differs significantly from the RFC, and where the ALJ provided no reason to discount Dr. Kalayjian's opinion, is his conclusion that McFarland's pain was such that could stand or walk for just one hour in an 8 hour day, that he required a sit/stand option and extra work breaks.[85] He stated that the pain would interfere with concentration, take McFarland off task and cause absences.[86] As McFarland notes here, these portions of Dr. Kalayjian's opinion are inconsistent with the current RFC's finding that McFarland can do light work and sit for 6 hours and walk or stand for 6 hours in an 8 hour workday.[87]

---

[85] *Id*. at 1379.

[86] *Id*.

[87] *Id*. at 18.

In light of the foregoing, I find that the sole purported inconsistency cited by the ALJ was not evidence of an inconsistency at all, and was certainly not a good reason to downgrade the weight assigned to Dr. Kalayjian's opinion. Moreover, there is no stated reason to reduce the weight given to Dr. Kalayjian's opinion that applies to that portion of his opinion which does not support the RFC and is inconsistent with the opinions of the state agency reviewers. It is further noted that these state agency reviewers gave their opinions well before Dr. Kalayjian gave his medical source statement, and so could not have considered either his opinion or the bulk of his treatment notes. As such, substantial evidence does not support elevating the opinions of the state agency reviewers over that of Dr. Kalayjian.

## Conclusion

For the reasons stated, I find that substantial evidence does not support the decision of the Commissioner denying benefits to Andre McFarland. Therefore, that decision is hereby reversed, and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 29, 2018　　　　　　　　　　　　s/ William H. Baughman, Jr.　　　　　
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge